538 A.2d 61

**Margaret STORM, Appellant,**

v.

**W. Brian GOLDEN.**

Superior Court of Pennsylvania.

Argued Sept. 22, 1987.

Filed Feb. 22, 1988.

Steven E. Krawitz, E. Stroudsburg, for appellant.

Eugene J. Maginnis, Philadelphia, for appellee.

Before CIRILLO, President Judge, and McEWEN and TAMILIA, JJ.

TAMILIA, Judge:

Appellant, Margaret H. Storm, commenced this action against her former attorney, W. Brian Golden, appellee, by writ of summons on June 3, 1981 followed by a complaint in trespass and assumpsit filed March 31, 1982. In her complaint, appellant claims damages for professional negligence and breach of contract arising from appellee's representation in a real estate transaction. After procedural delays, the case came to trial before a jury on February 7, 1986. At the close of appellant's case-in-chief, appellee moved for a compulsory nonsuit (N.T. 2/7/87, pp. 122–23), which was granted (N.T. 2/7/87, p. 143). Appellant filed a timely motion to remove the nonsuit and for new trial, which was denied by Order of January 16, 1987. This timely appeal followed.

The trial court found that in June, 1979, appellant negotiated an oral agreement with Albert Cole to sell a residential home for $48,000. She then retained appellee to draft an installment sales agreement containing the terms of the oral agreement reached by appellant and Cole prior to contacting appellee. Appellee drafted the installment sales agreement which provided appellant was to receive $131 per month from July 1, 1979 until closing on November 1, 1979, and thereafter, $500 per month until the entire contract price of $48,500 plus interest had been paid over the course of a ten-year term, with a clause expressly prohibiting prepayment of any of the installments until July of 1982. The installment sales agreement was executed by appellant and Cole at appellee's office on June 29, 1979. Prior to closing, appellant delivered to appellee a handwritten affidavit, signed by her on July 5, 1979 before a notary public, attesting that Cole had prepaid "all monthly payments in the entire sum of $38,500" (Defendant's Exhibit No. 1, 2/7/86). In addition to the real estate transaction, appellant gave Cole between $3,500 and $5,500 as a personal loan.

Sometime in September, 1979, Cole executed a sales agreement prepared by a real estate corporation to sell the house to Wayne and Patricia Smith. Patricia Smith was appellee's legal secretary. Appellant also executed the sales agreement on October 4, 1979, and on October 18, 1979 appellant signed the deed at appellee's office in advance of closing because at that time she felt she would be unable to attend the closing. The closing took place on October 30, 1979 with the Smiths, Cole, appellant, appellee and various bank representatives in attendance. At the closing, appellant received a $5,500 payment on the personal loan from Cole. A proceeds check in the amount of $24,-542.76 was made payable to appellant and Cole. Both appellant and Cole endorsed this check and appellant delivered it to Cole; he has not been seen nor heard from since. A second check in the amount of $10,107.12 was forwarded to a savings and loan to satisfy appellant's mortgage. Appellant now blames appellee for what she perceives as his failure to ensure that she received the proceeds of the sale. The trial court specifically found that appellant's "irrational trust in Albert Cole was founded in Christian faith and fueled by his representation of faith and Biblical interest to such a degree that under his influence 'she couldn't think for herself' " (Slip Op., Vicar, J., 1/16/87, p. 3).

Appellant claims it was error to consider and enter a compulsory nonsuit in this case because appellee had already entered evidence before his motion for a nonsuit. At trial, appellant testified on her own behalf concerning appellee's conduct and representation in the real estate transaction.. On cross-examination, appellee admitted into evidence three defense exhibits and examined appellant as to matters concerning the exhibits. Defendant's Exhibit No. 1 is a handwritten affidavit written and signed by appellant which states she waived her rights in the installment sales agreement and states she was prepaid by Cole in the amount of $38,500 (N.T. 2/7/86, p. 42). Defendant's Exhibit No. 2 is a treasurer's check in the amount of $24,542.76 with the bank as payor and the appellant and Cole as payees, representing

the proceeds of the house sale to the Smiths (N.T. 2/7/86, p. 50). Lastly, defendant's Exhibit No. 3 is a check in the amount of $10,107.12 made payable to a savings and loan in order to satisfy appellant's mortgage. All of these exhibits were intended to show that appellant received the proceeds due her from the transactions involved (N.T. 2/7/86, p. 52).

At the end of appellant's case, appellee moved for a compulsory nonsuit; the parties argued the motion, which was granted at trial (N.T. 2/7/87, p. 143).

■ A motion for compulsory nonsuit allows a defendant to test the sufficiency of a plaintiff's evidence. *Francioni v. Gibsonia Truck Corporation*, 472 Pa. 362, 372 A.2d 736 (1977). A compulsory nonsuit can only be granted in cases where it is clear that a cause of action has not been established and the plaintiff must be given the benefit of all favorable evidence along with all reasonable inferences of fact arising from that evidence, resolving any conflict in the evidence in favor of the plaintiff. *Coatesville Contractors v. Borough of Ridley*, 509 Pa. 553, 506 A.2d 862 (1986); *Morena v. South Hills Health System*, 501 Pa. 634, 462 A.2d 680 (1983).

Pennsylvania Rule of Civil Procedure 230.1, Compulsory Nonsuit at Trial, provides:

> In a case involving only one defendant, at the close of plaintiff's case on liability *and before any evidence on behalf of the defendant has been introduced,* the court, on the oral motion of a party, may enter a nonsuit if the plaintiff has failed to establish a right to relief. If the motion is not granted, the trial shall proceed. If the motion is granted, the plaintiff may file a written motion for the removal of the nonsuit.

(Emphasis added.) Our Supreme Court has strictly enforced the rule that a nonsuit may not be granted where a defendant has offered evidence either during the plaintiff's case, *Highland Tank & Manufacturing Company v. Duerr*, 423 Pa. 487, 225 A.2d 83 (1966); *Cantanzaro v. Pennsylvania Railroad Company*, 230 Pa. 305, 79 A. 624 (1911), or after it. *Atlantic Richfield Company v. Razum-*

*ic,* 480 Pa. 366, 390 A.2d 736 (1978); *F.W. Wise Company v. Beech Creek Railroad Company,* 437 Pa. 389, 263 A.2d 313 (1970); *Jordan v. Sun Life Assurance Company of Canada,* 366 Pa. 495, 77 A.2d 631 (1951).[1]

■ Here, appellee offered the defense exhibits during appellant's case and the trial court had the exhibits before it when it evaluated the motion for compulsory nonsuit. The express language of Rule 230.1 and the above cited authorities compel us to conclude the trial court was not empowered to enter a nonsuit because appellee had offered evidence.

■ However, even though it was procedurally improper for the trial court to enter a nonsuit, we find that as a matter of law the error was harmless. *See Atlantic Richfield Company, supra* (entertaining a harmless error argument with respect to improper entry of a nonsuit); *Jordan, supra* (ruling that an improperly entered nonsuit could not result in a new trial when to do so would be a vain act as a matter of law); and *Pushnik v. Winky's Drive In Restaurants,* 242 Pa.Super. 323, 363 A.2d 1291 (1976) (concluding improperly entered nonsuit would be affirmed as harmless error where defendant could not be liable as a matter of law). We reach this determination upon review of the basis of the trial court's entering nonsuit and in disposing of appellant's second issue on appeal dealing with whether expert testimony is required as a matter of law in order to establish a prima facie case of legal malpractice in Pennsylvania.

■ There are three essential elements which must be established in order to bring an action for legal malpractice:

1. Although these cases are interpreting the former statute authorizing entry of a compulsory nonsuit, Act of March 11, 1875, P.L. 6, § 1, as amended, 12 P.S. § 645, repealed by Act of April 28, 1978, P.L. 202, No. 53, § 1, effective June 27, 1980 by operation of § 4(b), Pennsylvania Rule of Civil Procedure 230.1, adopted October 19, 1983, effective January 1, 1984, is adapted from the former statute and, as the 1983 Explanatory Comment explains, "for the most part continues the prior practice." Therefore, prior case law interpreting the repealed statute retains precedential value in interpreting Rule 230.1.

1) the employment of the attorney or other basis for duty; 2) the failure of the attorney to exercise ordinary skill and knowledge; and 3) that such negligence was the proximate cause of damage to the plaintiff. *Trice v. Mozenter*, 356 Pa.Super. 510, 515 A.2d 10 (1986), *allocatur granted*, 514 Pa. 643, 523 A.2d 1132 (1987); *ei bon ee baya ghananee v. Black*, 350 Pa.Super. 134, 504 A.2d 281 (1986); *Schenkel v. Monheit*, 266 Pa.Super. 396, 399, 405 A.2d 493, 494 (1979) (establishing the elements in Pennsylvania). The trial court concluded that because appellant offered no competent evidence in the form of expert testimony as to the proper standard of care under which appellee should have conducted himself and in what way appellee's actions deviated from that standard, the second element was not met, therefore, as a matter of law appellant failed to meet her burden of proof, warranting entry of a nonsuit.

Whether expert evidence is necessary or required in a legal malpractice case to establish an attorney's breach of his duty of care is a question of first impression in Pennsylvania. However, we are not without guidance in this area. As a general rule, our Supreme Court has held that "expert testimony is necessary to establish negligent practice in any profession." *Powell v. Risser*, 375 Pa. 60, 65, 99 A.2d 454, 456 (1953); *Bierstein v. Whitman*, 360 Pa. 537, 541, 62 A.2d 843, 845 (1949).[2] Although such a general statement is not a concrete pronouncement as to any one profession, it exhibits a recognition that when dealing with the higher standards attributed to a professional in any field a layperson's views cannot take priority without guidance as to the acceptable practice in which the professional must operate. The standard of care in a legal malpractice case is whether the attorney has exercised ordinary skill and knowledge related to common professional practice. *ei bon ee baya ghananee, supra; Hoyer v. Frazee*, 323 Pa.Super. 421, 470 A.2d 990 (1984). By its very nature, the specific standard

**2.** *See Lambert v. Soltis,* 422 Pa. 304, 308, 221 A.2d 173, 176 (1966) (quoting *Robinson, infra*); *Robinson v. Wirts,* 387 Pa. 291, 297, 127 A.2d 706, 709 (1956) (quoting *Bierstein, supra*); *National Cash Register Company v. Haak,* 233 Pa.Super. 562, 335 A.2d 407 (1975).

of care attributed to legal practioners necessitates an expert witness' explanation where a jury sits as the fact finder.

■ We recognize that, "[i]f all the primary facts can be accurately described to a jury and if the jury is as capable of comprehending and understanding such facts and drawing correct conclusions from them as are witnesses possessed of special training, experience or observation, then there is no need for the testimony of an expert." *Reardon v. Meehan*, 424 Pa. 460, 465, 227 A.2d 667, 670 (1967). Expert testimony becomes necessary when the subject matter of the inquiry is one involving special skills and training not common to the ordinary lay person. *Reardon, supra; Hayes Creek Country Club, Inc. v. Central Penn Quarry Stripping & Construction Company*, 407 Pa. 464, 181 A.2d 301 (1962); *Pirches v. General Accident Insurance Company*, 354 Pa.Super. 303, 511 A.2d 1349 (1986). The requirement of expert testimony has been applied to physicians, *see e.g. Chandler v. Cook*, 438 Pa. 447, 265 A.2d 794 (1970), dentists, *see e.g. Lambert, supra,* and architects, *see National Cash Register, supra.* We hold the requirement applies equally to legal malpractice claims under the circumstances presented here.[3]

We expressly limit our holding to the present circumstances in order to allow flexibility as to when expert evidence is needed. Legal malpractice claims run a wide gamut of circumstances from clear cut claims of a breach of an attorney's duty for allowing the statute of limitations to run against the former client's cause of action to the complex determination required of a claim of breach of duty involving the attorney's choice of trial tactics in which a layperson's judgment obviously requires guidance. Be-

---

**3.** This has been the rule in federal courts applying Pennsylvania law since the United States Court of Appeals for the Third Circuit's decision in *Lentino v. Fringe Employee Plans, Inc.*, 611 F.2d 474, 480 (3d Cir.1979), where the Third Circuit affirmed a district court's involuntary dismissal of a legal malpractice action after concluding that expert testimony was necessary for legal malpractice claims in Pennsylvania. *See e.g., Gans v. Mundy,* 762 F.2d 338 (3d Cir.1985).

tween these two extremes lie a myriad number of legal malpractice actions for which the necessity of expert evidence to establish the attorney's duty and breach thereof will not be readily evident without careful examination of the factual circumstances upon which they arise.[4]  Generally, the determination of whether expert evidence is required or not will turn on whether the issue of negligence in the particular case is one which is sufficiently clear so as to be determinable by laypersons or concluded as a matter of law, or whether the alleged breach of duty involves too complex a legal issue so as to warrant explication by expert evidence.  *Cf. Chandler, supra*, 438 Pa. at 451 n.*, 265 A.2d at 796 n.* ("The only exception to the requirement that expert testimony must be produced is where the matter under investigation is so simple, and the lack of skill or want of care so obvious, as to be within the range of the ordinary experience and comprehension of even nonprofessional persons."); *Burns v. City of Philadelphia*, 350 Pa.Super. 615, 624, 504 A.2d 1321, 1325 (1986) (same).

■  Here, the underlying question of whether legal malpractice occurred revolves around a lawyer's duty and responsibility in connection with representing a client in a real estate transaction.  We do not agree with appellant's assertions that the sale of real estate is an elementary and non-technical transaction which requires only simple common sense (appellant's brief at 21).  At issue is not the simplicity of the transaction but the duty and degree of care of the attorney.  Whether an attorney failed to exercise a reasonable degree of care and skill related to common professional practice in handling a real estate transaction is a question of fact outside the normal range of the ordinary experience of laypersons.

As to appellant's argument that her contract claim in assumpsit must be treated separately from her negligence claim in trespass and that expert testimony is not necessary

4.  For a collection and review of state and federal cases in which courts have considered the admissibility or necessity of expert evidence as to standards of practice and negligence in malpractice actions against attorneys, *see* Annot., 14 A.L.R. 4th 170 (1982).

to sustain the burden in a breach of contract action, we find our decision in *Hoyer, supra,* controlling. Appellant's breach of contract count does not allege that appellee failed to follow specific instructions nor that a breach of a specific provision of the contract occurred. Instead, as in *Hoyer,* we find appellant's assumpsit claim is not a true contract cause of action but sounds in negligence by alleging appellee failed to exercise the appropriate standard of care. *See Duke & Company v. Anderson,* 275 Pa.Super. 65, 418 A.2d 613 (1980) (defining the different basis for legal malpractice actions). Consequently, expert testimony is needed for both claims.

As already stated, appellant's failure to produce an expert witness as to the standard of care under which appellee should have conducted himself and as to any deviation from that standard that may have occurred makes appellant's case defective as a matter of law and the procedurally improper entry of a nonsuit harmless error. Our rules of civil procedure place an obligation upon a party to identify expert witnesses and the substance of their facts and opinions during discovery when requests for such information are made. Pennsylvania Rule of Civil Procedure 4003.5, governing discovery of expert testimony, provides in relevant part:

(a) Discovery of facts known and opinions held by an expert, otherwise discoverable under the provisions of Rule 4003.1 and acquired or developed in anticipation of litigation or for trial, may be obtained as follows:

(1) A party may through interrogatories require

(a) any party to identify each person whom the other party expects to call as an expert witness at trial and to state the subject matter on which the expert is expected to testify and

(b) the other party to have each expert so identified by him state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. The party answering the interrogatories may file as his answer a report of

the expert or have the interrogatories answered by his expert. The answer or separate report shall be signed by the expert.

. . . .

(b) *If the identity of an expert witness is not disclosed in compliance with subdivision (a)(1) of this rule, he shall not be permitted to testify on behalf of the defaulting party at the trial of the action.* However, if the failure to disclose the identity of the witness is the result of extenuating circumstances beyond the control of the defaulting party, the court may grant a continuance or other appropriate relief.

(Emphasis added.) Rule 4019, Sanctions, restates the rule in subsection (b), above, as follows:

(i) A witness whose identity has not been revealed as provided in this chapter *shall not be permitted at the trial of the action.* However, if the failure to disclose the identity of the witness is the result of extenuating circumstances beyond the control of the defaulting party, the court may grant a continuance or other appropriate relief.

Pa.R.C.P. 4019(i) (emphasis added). "Thus, the rule is one of mandatory preclusion at trial of the testimony of undisclosed expert witnesses in the absence of extenuating circumstances." *Kaminski v. Employers Mutual Casualty Company*, 338 Pa.Super. 400, 407, 487 A.2d 1340, 1344 (1985).

■ Appellee propounded written interrogatories which clearly requested, *inter alia,* the names of the expert witnesses who were expected to testify on appellee's behalf and the subject matter involved. *See* Defendant's Interrogatories Nos. 12–13. In response, appellant answered: "Not known to me at this time." *See* Plaintiff's Answer to Defendant's Interrogatory No. 12. A review of the record discloses appellant made no further attempt to supplement this response, pursuant to Pa.R.C.P. 4007.4, prior to trial. Because a request of record was made in this case and since

a tactical decision not to present expert testimony on the part of appellant is not an "extenuating circumstance" beyond the control of appellant, we find appellant would be precluded from presenting the required expert testimony in any future trial. Therefore, a new trial is not warranted by the improper entry of a nonsuit in this case. Appellee should not be penalized by the burden of a new trial after properly applying the rules of civil procedure.

Accordingly, Order affirmed.[5]

Order affirmed.

---

**5.** Due to our disposition of this case on the issue of expert testimony, we need not address appellant's remaining claim on appeal.